IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| CHRISTINE D. TINGLE | § | PLAINTIFF |
| | § | |
| v. | § | Civil No. 1:18cv149-HSO-JCG |
| | § | |
| MERCHANTS & MARINE BANK | § | DEFENDANT |

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION [48] FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION [50] FOR PARTIAL SUMMARY JUDGMENT**

BEFORE THE COURT are Defendant Merchants and Marine Bank's Motion [48] for Summary Judgment and Plaintiff Christine D. Tingle's Motion [50] for Summary Judgment. This suit arises out of Plaintiff's termination from her employment with Merchants and Marine Bank. Plaintiff asserts that she was discharged because of her age in violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621-634 (2012).

Defendant has filed a Motion [48] for Summary Judgment, asking the Court to dismiss Plaintiff's suit in its entirety. Plaintiff has filed her own Motion [50] for Partial Summary Judgment, requesting that the Court dismiss Defendant's affirmative defense of failure to mitigate. Having considered the parties' submissions, the record, and relevant legal authority, the Court is of the opinion

1

that Defendant's Motion [48] for Summary Judgment should be granted and that Plaintiff's Motion [50] for Partial Summary Judgment should be denied. Plaintiff's claims should be dismissed with prejudice.

I. BACKGROUND

Plaintiff Christine D. Tingle ("Tingle") was hired by Defendant Merchants and Marine Bank ("M&M Bank") in 1982 to work in its Pascagoula, Mississippi, office. *See* Compl. [1] at 2. At the time of her September 11, 2017, termination, Tingle was employed hourly by M&M Bank as an insurance imaging specialist in the loan department. Pl.'s Resp. Mem. [59] at 1. On September 7, 2017, M&M Bank hosted a bridal shower for one of its employees. *Id.* Loan department manager Lisa Adams ("Adams") emailed the department's employees, including Tingle, advising them that the department would be closing at 4:00 p.m. that day for the shower and instructing all employees to clock out at that time. *Id.* at 2. Employees used their desktop computers to record their hours through the Bank's web-based timekeeping system. Def.'s Mem. in Supp. of Summ. J. [49] at 2. It is undisputed that Tingle did not follow Adams's instructions and, instead, attended the bridal shower and changed into tennis attire before clocking out at 4:30 p.m. *Id.* at 4. After the bridal shower, Adams checked her department's time records to confirm that all of her employees had clocked out at 4:00 p.m. as directed. Pl.'s Resp. Mem. [59] at 2. Once Adams learned that Tingle did not clock out at 4:00 p.m., Adams wrote a letter to M&M Bank's Human Resources department to report the matter. *Id.*

Sheryl Wolfe ("Wolfe"), M&M Bank's Human Resources Director, received

2

Adams's letter and asked Tingle to meet in her office on September 11, 2017. *Id.* In anticipation of the meeting, Wolfe prepared both a final warning and a termination memorandum. Def.'s Mem. in Supp. of Summ. J. [49] at 4. During the meeting Wolfe asked Tingle why she did not clock out at 4:00 p.m. as she was instructed. *Id.* Tingle initially told Wolfe that she "just got [her] hours in" and decided to clock out at her normal time of 4:30 p.m., despite Adams's instructions to clock out earlier. *Id.* Later in the conversation, Tingle told Wolfe that she simply forgot about the instruction to clock out at 4:00 p.m. and asked Wolfe if she could change her time record.[1] Pl.'s Resp. Mem. [59] at 3. Wolfe explained that such a correction should have been made by Tingle earlier and that presently making it would be fraudulent, especially in light of Tingle's admission that she intentionally disobeyed instructions. *See* Def.'s Mem. in Supp. of Summ. J. [49] at 5; Pl.'s Resp. Mem. [59] at 3. Based on their conversation, Wolfe decided to terminate Tingle for falsifying her timecard. Pl.'s Resp. Mem. [59] at 3. M&M Bank later hired Carissa Scott, who was under the age of 40, to replace Tingle, who was over the age of 40. *Id.*

Tingle filed this lawsuit on April 30, 2018, claiming that her termination was in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621-634 (2012), and the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1461 (2012). Compl. [1] at 1. Tingle's ERISA claims were voluntarily dismissed with prejudice on March 18, 2019. Order [44].

---

[1] M&M Bank uses a Time Exception Form by which hourly employees can correct errors in their timekeeping. However, such changes must be made on the day following the error, at the latest. *See* Def. Ex. A [48-1] at 34.

3

M&M Bank then filed the instant Motion [48] for Summary Judgment seeking dismissal of Tingle's remaining ADEA claim. It argues that there is no genuine issue of material fact and that summary judgment is proper. Tingle opposes the Motion and has filed her own Motion [50] for Partial Summary Judgment requesting that M&M Bank's affirmative defense of failure to mitigate be dismissed.

## II. DISCUSSION

A. Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the movant carries this burden, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

To rebut a properly supported motion for summary judgment, the opposing party must show, with "significant probative evidence," that there exists a genuine issue of material fact. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000). "A genuine dispute of material fact means that evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Royal v. CCC&R Tres Arboles, L.L.C.*, 736 F.3d 396, 400 (5th Cir. 2013) (quotation omitted). If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate. *Cutting Underwater Techs. USA, Inc. v. ENI U.S. Operating Co.*, 671 F.3d 512, 517 (5th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

4

249 (1986)). In deciding whether summary judgment is appropriate, the Court views facts and inferences in the light most favorable to the nonmoving party. *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010).

B.  Plaintiff's ADEA Claim

Tingle asserts that M&M Bank's conduct in terminating her employment constituted intentional discrimination on the basis of Tingle's age in violation of the ADEA. The ADEA prohibits an employer from discharging an employee on the basis of the employee's age. *Goudeau v. National Oilwell Varo, L.P.*, 793 F.3d 470, 474 (5th Cir. 2015). "Because it is unlikely that there will be direct evidence of an employer's thought process, ADEA claims typically rely on circumstantial evidence evaluated under the burden-shifting framework outlined in *McDonnell Douglas Co. v. Green*." *Campbell v. Zayo Group, L.L.C.*, 656 F. App'x 711, 713 (2016) (internal citations omitted); *see also McDonnell Douglas Co. v. Green*, 411 U.S. 792, 802-03 (1973). Under the *McDonnell Douglas* framework, the initial burden is on the employee to establish a prima facie case of age discrimination. *Goudeau*, 793 F.3d at 474. Once the employee establishes a prima facie case, the burden shifts to the employer to show that there was a legitimate, nondiscriminatory reason for terminating the employee. *Id.* If the employer meets this burden, the employee must then prove that the employer's reason for termination was pretextual. *Id.*

"Under *McDonnell Douglas,* a plaintiff must first establish a prima facie case of age discrimination by showing that (1) he was discharged; (2) he was qualified for the position; (3) he was within the protected class at the time of discharge; and (4) he was either i) replaced by someone outside the protected class, ii) replaced by

someone younger, or iii) otherwise discharged because of his age." *Id.* (quoting *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 350 (5th Cir. 2005)). M&M Bank does not dispute that Tingle can establish a prima facie case of discrimination under the ADEA. Def.'s Mem. in Supp. of Summ. J. [49] at 7. As such, the Court will consider Tingle's initial burden met for purposes of its analysis.

Because it is undisputed that Tingle can establish a prima facie case of age discrimination, the burden shifts to M&M Bank to advance a legitimate, nondiscriminatory reason for firing Tingle. M&M Bank argues that Tingle was discharged because "she engaged in dishonest conduct and falsified her September 7, 2017 time card." *Id.* at 8. Tingle does not dispute this claim and admits that such a reason for her termination is legitimate and nondiscriminatory. Pl.'s Resp. Mem. [59] at 5; *see also Williams v. Weems Cmty. Mental Health Ctr.*, No. 4:04cv179, 2006 WL 1666280, at *4 (S.D. Miss. June 13, 2006) (finding that falsification of time records is a legitimate, nondiscriminatory reason for discharging an employee). Thus, the only issue that remains is whether M&M Bank's stated reason for terminating Tingle was pretextual.

"Once the employer produces sufficient evidence to support a nondiscriminatory explanation for its decision[,] [the employee] must be afforded the opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000) (internal quotations omitted). Tingle alleges that three pieces of evidence

6

support her claim that M&M Bank's decision to discharge her for fraudulent timekeeping was a pretext for age discrimination. *See* Pl.'s Resp. Mem. [59] at 6. First, Tingle contends that a younger employee, Lakelia Jones, also falsified her timesheets but was not fired. *Id.* Second, Tingle asserts that Adams, Tingle's manager, intentionally refrained from informing Tingle about the timekeeping issue so that Tingle would not have an opportunity to correct it before she was reprimanded. *Id.* Third, Tingle argues that Human Resources Director Wolfe also intentionally failed to inform Tingle of her timekeeping error until after the pay period ended so that Tingle could not fix the error. *Id.* M&M Bank maintains that Tingle's claims are not supported by any evidence in the record and, thus, Tingle has not met her burden of showing pretext. Def.'s Reply Br. [64] at 2. The Court agrees.

1.  <u>Defendant did not treat Plaintiff disparately</u>

Tingle argues that M&M Bank's discrimination against her is evidenced by the fact that it did not fire a similarly situated employee who was younger than her. *See* Pl.'s Resp. Mem. [59] at 6. An employee may establish pretext by showing that the employer treated the employee differently than it did another, younger employee. *Little v. Republic Ref. Co., Ltd.*, 924 F.2d 93, 97 (5th Cir. 1991). "To establish a claim of disparate treatment, [the employee] must show that [the employer] gave preferential treatment to a younger employee under 'nearly identical' circumstances." *Id.* "Employees with different supervisors, who work for different divisions of a company . . . generally will not be deemed similarly situated." *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009).

7

According to Tingle, another M&M Bank employee, Lakelia Jones ("Jones"), also mishandled her timekeeping but was not terminated. Pl.'s Resp. Mem. [59] at 6. At the time of her infraction, Jones was under forty years old and worked in Defendant's Human Resources Department. *Id.* at 3. While the parties disagree as to the circumstances surrounding Jones's timekeeping issue, the record itself is clear. On June 6, 2018, Lauren Germany ("Germany"), Jones's co-worker in the Human Resources Department, complained to Wolfe that Jones was not keeping her time correctly. Def. Ex. D [48-4] at 6. Specifically, Germany alleged that Jones did not clock out for her hour long lunch break on two specific occasions,[2] and that Jones would sometimes take longer than her given hour for lunch. *Id.* at 8.

During her investigation of the two dates reported by Germany, Wolfe found that Jones was not clocking out for an hour during the lunch period but was clocking out later during the afternoon for at least an hour. *Id.* Wolfe was unable to substantiate Germany's allegation that Jones was taking more than an hour for her lunch break.[3] *Id.* Wolfe concluded that "[t]he face of Ms. Jones' [sic] time cards for the specific dates reported did not indicate to me that she was on-the-clock

---

[2] While Germany suspected that Jones regularly did not clock out for her lunch break, she was only able to provide Wolfe with two specific instances on which this occurred, December 19, 2017, and May 22, 2018. Def. Ex. D [48-4] at 6; Def. Ex. F [48-6] at 44-45.

[3] Tingle alleges that Wolfe lied in both her sworn testimony and her affidavit about not knowing whether Jones was taking long lunch breaks. Pl.'s Resp. Mem. [59] at 3. Plaintiff's claim is based on Germany's testimony that Wolfe and Jones occasionally lunched together and, thus, Germany was "sure [Wolfe] knew" that Jones was taking long lunch breaks. Pl.'s Resp. Mem. [59] at 3; Def. Ex. F [48-6] at 93. In her affidavit, Wolfe admitted to going to lunch with Jones on occasion but did not recall the specific dates or how long their lunches lasted. Def. Ex. D [48-4] at 9. Plaintiff's allegation against Wolfe therefore hinges solely on Germany's speculative testimony and need not be considered by the Court. *See LSR Consulting, LLC v. Wells Fargo Bank, N.A.*, 835 F.3d 530 (5th Cir. 2016) ("At the summary judgment state, materials cited to support or dispute [must] be *capable* of being presented in a form that would be admissible evidence) (emphasis in original) (internal quotations omitted).

8

without permission for a longer period than she actually worked, nor did such records indicate that Ms. Jones was paid for more time than she had worked." *Id.* Still, Wolfe met with Jones, issued her a "Final Warning" for her timekeeping mistake, and explained how she wanted Jones to keep her time in the future. *Id.* at 10.

Tingle has not established a claim of disparate treatment because Tingle and Jones were not similarly situated employees. M&M Bank argues that Tingle and Jones were not comparable employees because they had different jobs in different departments. Def.'s Mem. in Supp. of Summ. J. [49] at 16; Def's Reply Mem. [64] at 2. The Fifth Circuit has held that employees can be "nearly identical" without sharing the same immediate supervisor if "the ultimate decision maker as to the employees' continued employment is the same individual." *Lee*, 574 F.3d at 260-61. Thus, the fact that Tingle and Jones worked in different departments does not necessarily preclude a finding that they were similarly situated because their employment statuses were both determined by Wolfe. Nevertheless, the Court finds that Tingle and Jones were not nearly identical employees because they differed in terms of their conduct. *See Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 221 (5th Cir. 2001) ("[T]he conduct at issue is not nearly identical when the difference between the plaintiff's conduct and that of those alleged to be similarly situated accounts for the difference in treatment received from the employer."). Despite the fact that they both had timekeeping infractions, Tingle's conduct at the time of and following the infractions was the reason that she was terminated, and Jones was

9

not.

According to Wolfe, Jones was never clocked in when she should not have been, but Tingle was. Def. Ex. D [48-1] at 9. Additionally, Wolfe testified that Jones's explanation for the timekeeping error was "markedly different from the response [Wolfe] received from Ms. Tingle" during their September 2017 meeting. *Id.* In sum, Tingle has not shown that she and Jones were similarly situated employees and, thus, she cannot rely upon a theory of disparate treatment to prove that M&M Bank's reason for her discharge was pretextual.

2. <u>Plaintiff has not shown that Lisa Adams's actions were discriminatory.</u>

Plaintiff next argues that M&M Bank's reason for terminating her was pretextual because Tingle's manager did not give her an opportunity to correct her time card before she reported Tingle to Human Resources. Pl.'s Resp. Mem. [59] at 6. According to Tingle, Adams used Tingle's fraudulent timekeeping as an opportunity to replace Tingle with a younger employee. *Id.* Tingle asserts that, while Adams did not make the ultimate decision to fire Tingle, Adams influenced Wolfe to do so. *Id.* In essence, Plaintiff advances a cat's paw theory of discrimination by which M&M Bank is liable for Adams's alleged discrimination. *Id.*

Under the cat's paw theory of discrimination, a plaintiff must establish "(1) that a co-worker exhibited discriminatory animus, and (2) that the same co-worker possessed leverage, or exerted influence, over the titular decisionmaker." *Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 654 (5th Cir. 2004) (internal quotations omitted). Tingle has failed to make a showing on either of these prongs. First, Tingle's only

evidence that Adams exhibited discriminatory animus is the fact that she reported Tingle's timekeeping to Wolfe and that Adams later hired a twenty-year old woman to replace Tingle. Pl.'s Resp. Mem. [59] at 6. Adams stated in her affidavit that she reported Tingle to Human Resources because Tingle disobeyed her direct order and remained on the clock while not working. Def. Ex. E [48-5] at 4. Tingle has not presented any evidence that refutes Adams's sworn statement or supports her conclusory allegation that Adams harbored a discriminatory animus when she reported Tingle to Human Resources. *See Roques v. Natchitoches Parish Sch. Bd.*, 583 F. App'x 466, 467 ("[A]nimus requires evidence of a substantial, deeply held prejudice.").

Next, Tingle fails to present any evidence that Adams exerted influence over Wolfe's decision to terminate Tingle. Adams testified that once she reported Tingle to Human Resources she "let them handle it from that point on." Def. Ex. B [48-2] at 13. Wolfe similarly testified, "Ms. Adams had nothing to do with the termination. Ms. Adams didn't know Tina was going to be terminated." Def. Ex. C [48-3] at 31. Plaintiff has proffered no evidence to contradict these statements other than her subjective belief that Adams wanted to fire Tingle because of her age. As such, Tingle has failed to carry her summary judgment burden in showing that Adams's actions towards here were discriminatory or that Adams influenced Wolfe's decision to discharge Tingle. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994) ("Unsubstantiated assertions are not competent summary judgment evidence.").

3. <u>Plaintiff has not presented evidence that suggests Wolfe's conduct was discriminatory.</u>

Plaintiff's final argument is that Wolfe intentionally did not notify Tingle of her timekeeping issue until after the pay period ended, which prevented Tingle from correcting her time. Pl.'s Resp. Mem. [59] at 7. Tingle claims that by waiting until the pay period ended, Wolfe made it so Tingle could not execute a Time Exception Form to remedy her mistake. *Id.* Through this argument, Tingle seems to assert that Wolfe had an affirmative duty to notify Tingle of the discrepancy in her time card and that Wolfe shirked this duty due to her discriminatory animus towards Tingle based upon her age. This argument is not supported by the record.

First, the record is clear that M&M Bank employees had an obligation to submit a Time Exception Form to correct any inaccurate timekeeping. *See* Def. Ex. A [48-1] at 31-34; Def. Ex. D [48-4] at 4; Def Ex. E [48-5] at 3. Tingle admitted to knowing about this policy in her deposition and recounted how she had previously submitted Time Exception Forms on several occasions. Def. Ex. A [48-1] at 31-34. In addition, Tingle testified that she did not go into work the day after her timekeeping infraction, September 8, 2017, because she did not work on Fridays. *Id.* at 46. Tingle's first day back at work after her September 7 time stamp was Monday, September 11, which was the day Wolfe met with her. *Id.* at 47-49. Even if Plaintiff is correct that Wolfe did not meet with Tingle until after the pay period ended, by Tingle's own admission, September 11 was the first opportunity Wolfe had to meet with Tingle about her timekeeping. *Id.* Further, Wolfe had not decided whether to fire Tingle at the time of their meeting and had prepared paperwork for

12

both a final warning and a termination. Def.'s Mem. in Supp. of Summ. J. [49] at 4. As such, the Court finds insufficient competent summary judgment evidence to suggest that Wolfe intentionally delayed meeting with Tingle until after the pay period ended.

Second, even if Plaintiff's allegation against Wolfe were true, there is no evidence that Wolfe's actions were the result of age discrimination. Tingle has not presented any proof that Wolfe's decision to terminate her was based on Tingle's age. In fact, Tingle testified that the only reasons she believed that she was discriminated against because of her age were that her actions "were no reason to be terminated" and that she was replaced by a younger woman. *Id.* at 54-57. Tingle's subjective belief that her actions did not warrant a discharge is not enough to show that M&M Bank violated the ADEA. *See Campbell*, 656 F. App'x at 717 ("The ADEA does not require an employer 'to make proper decisions, only nondiscriminatory ones.'") (quoting *Bryant v. Compass Grp. USA Inc.*, 413 F.3d 471, 478 (5th Cir. 2005)). Plaintiff has not carried her burden of showing that Wolfe's actions were discriminatory and that M&M Bank's stated reason for Plaintiff's discharge was pretextual. *Forsyth*, 19 F.3d at 1533 ("Unsubstantiated assertions are not competent summary judgment evidence."). Because Tingle has not shown that there is a genuine issue of material fact as to whether M&M Bank's legitimate, nondiscriminatory reason for her discharge was pretextual, M&M Bank's Motion for Summary Judgment should be granted.

C.  <u>Plaintiff's Motion [50] for Partial Summary Judgment</u>

Tingle asks the Court to dismiss Defendant's affirmative defense of failure to

mitigate. Because the Court will grant Defendant's Motion [48] for Summary Judgment, Tingle's Motion [50] is moot and her Motion [50] for Partial Summary Judgment should be denied.

### III. CONCLUSION

Because Defendant M&M Bank has shown that there exists no genuine issue of material fact and that it is entitled to judgment as a matter of law, Defendant M&M Bank is entitled to summary judgment. To the extent the Court has not specifically addressed any of the parties' remaining arguments, it has considered them and determined that they would not alter the result.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, Defendant Merchants & Marine Bank's Motion [48] for Summary Judgment is **GRANTED**. All claims raised by Plaintiff Christine D. Tingle are **DISMISSED WITH PREJUDICE**.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, Plaintiff Christine D. Tingle's Motion [50] for Partial Summary Judgment is **DENIED**. The Court will enter a separate Final Judgment in accordance with Federal Rule of Civil Procedure 58.

**SO ORDERED AND ADJUDGED**, this the 4th day of December, 2019.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE